UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

King Cole Foods, Inc., and
Salam Sam Manni,

        Plaintiffs,                        Case No. 12-cv-12122

v.

                                          Hon. Sean F. Cox
                                          United States District Court Judge

United States of America, United States
Department of Agriculture, Special Agent Mark W.
McClutchey, and Federal Agents Jane
and John Doe 1-10,

        Defendants.
_____/

**OPINION AND ORDER
GRANTING DEFENDANT MARK MCCLUTCHEY'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT [DOCKET ENTRY NO. 30]**

Plaintiff King Cole Foods, Inc. ("King Cole Foods") operates as a grocery store in downtown

Detroit.  It formerly participated in the Supplemental Nutrition Assistance Program ("SNAP"), but

was permanently disqualified by the Food and Nutrition Service of the United States Department of

Agriculture ("FNS") as a sanction for food stamp trafficking.  Plaintiff Salam Sam Manni is the part

owner and President of King Cole Foods.

The Plaintiffs filed their Complaint on May 10, 2012, seeking judicial review of the sanction

imposed.  In their Complaint, the Plaintiffs also assert claims against the Defendants United States

of America and the United States Department of Agriculture, as well as the unknown federal agents,

who executed the search warrant for the trafficking offenses, under the Fourth, Fifth and Eighth

1

Amendments.  The Complaint contends that the Defendants conspired to seize their property during the execution of the search warrant, and that the seizure of their property and the resulting sanction for food stamp trafficking resulted in a *de facto* seizure/taking of their business without due process of law and constituted a grossly disproportionate fine.

On July 23, 2012, the Defendants United States of America and United States Department of Agriculture filed their Motion to Dismiss, pursuant to Federal Rules of Civil Procedures 12(b)(1) and 12(b)(6), contending that (1) the Court lacks subject matter jurisdiction to overturn the FNS' discretionary decision to sanction King Cole Foods with a permanent disqualification and that (2) the Plaintiffs' constitutional claims fail to state claims upon which relief can be granted.

A hearing was held on October 18, 2012, to address the issues presented in that motion.  At that hearing, the Plaintiffs advised the Court that they were advancing *Bivens* claims in their Complaint against the federal agents who executed the search warrant.  The parties' arguments were taken under advisement.  The Plaintiffs were also granted leave to file their First Amended Complaint, which named an additional defendant, Special Agent Mark W. McClutchey, the agent in charge of the trafficking investigation, who submitted the search warrant affidavit in this action. The Plaintiffs did not name any other agents in their First Amended Complaint.

A status conference was held on November 2, 2012.

On November 6, 2012, Defendants United States of America and United States Department of Agriculture filed their Motion to Dismiss Plaintiffs' First Amended Complaint.

Because the Court lacked jurisdiction to overturn the FNS' discretionary decision to sanction King Cole Foods with a permanent disqualification and because the Plaintiffs' constitutional claims fail to state claims upon which relief can be granted, the Court **GRANTED** the Motion to Dismiss

[Docket No. 8] and the Motion to Dismiss Plaintiffs' First Amended Complaint [Docket No. 24].

However, in their Motion to Dismiss [Docket No. 8], the Defendants United States of America and United States Department of Agriculture state as follows :

> Plaintiffs also advance claims for personal liability against several unidentified agents or officers for supposed violations of the Fourth, Fifth, and Eighth Amendments, under *Bivens*.  Because those defendants remain unidentified, this motion does not address any arguments for dismissal the defendants may have. Nor could this motion do so, since representation by the undersigned counsel of individual agents and officers sued in their individual capacities requires both the request of that party and authorization from the Department of Justice.

(Docket No. 8, at 9.)

Likewise, the Motion to Dismiss Plaintiffs' First Amended Complaint does not address Plaintiffs' *Bivens* claims against Agent McClutchey and the other the federal agents who executed the search warrant.  (Docket Entry No. 24, at 27–28.)

Accordingly, the Court held that Plaintiffs' *Bivens* claims remain in this action.

On January 8, 2013, Defendant Mark McClutchey filed "Defendant Mark McClutchey's Motion to Dismiss Plaintiffs' First Amended Complaint."  (Docket Entry No. 30.)

The Court finds that the issues have been adequately presented in the parties' briefs and that oral argument would not significantly aid the decision making process.  *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan.  The Court therefore orders that the motion will be decided on the briefs.

For the reasons that follow, the Court shall **GRANT** "Defendant Mark McClutchey's Motion to Dismiss Plaintiffs' First Amended Complaint."

## BACKGROUND

Plaintiff King Cole Foods is a Michigan corporation.  (Docket No. 19, at 1, ¶ 1.)  It operates

3

as a grocery store, which is located at 40 Clairmount Street in Detroit, Michigan.  (*Id.* at 1–2, ¶¶ 1, 9–10.)  Plaintiff Salam Manni is the part owner and President of King Cole Foods.  (*Id.* at 2, ¶ 9.)

On September 20, 2011, federal agents executed a search warrant on King Cole Foods and its bank accounts at Bank of Michigan.  (*Id.* at 3, ¶ 13; Docket No. 8-3.)  The warrant was supported by the affidavit of Special Agent Mark W. McClutchey,  who was the agent in charge of the King Cole Foods trafficking investigation.  (*Id.*)

The affidavit states in relevant part:

14.    The investigation of King Cole Foods was initiated pursuant to information derived from another food stamp fraud investigation involving a liquor store known as **Caesar Food Center**.  **Caesar Food Center** is a large liquor store, located at 880 West McNichols Road in Detroit, Michigan.

15.    From July 2008 through present, USDA-OIG Special Agents have been conducting an investigation related to ongoing food stamp fraud and money laundering activities at **Caesar Food Center**.  Investigation has determined that **Caesar Food Center** is owned, operated, and or managed by **Ayad Yatooma (Yatooma)** and **Adnan Kejbou (Kejbou)**.  Beginning in August 2010, **Kejbou** began conspiring with **Adil Manni**, manager of **King Cole Foods**, to conduct fraudulent food stamp transactions.  More specifically, as will be detailed below, **Kejbou** used **EBT** card numbers and pin numbers, as obtained through numerous meetings with USDA-OIG Special Agents and confidential informants, and provided the information to **Adil Manni**.  **Adil Manni** then used the EBT card information to effect manual food stamp transactions at **King Cole**, thereby concealing some of the fraudulent food stamp activity at **Caesar Food Center**.  Since **Caesar Food Center** is a liquor store, and **King Cole Foods** is a supermarket, it is much easier to conceal large illegal food stamp transactions by conducting them through EBT terminals assigned to **King Cole Foods**.

16.    Based on my experience conducting food stamp trafficking investigations, I know that supermarkets are expected to conduct a greater volume of food stamp benefit transactions, and large individual food stamp transactions at a supermarket are not likely to raise suspicion; these same large transactions at a liquor store are more likely to cause suspicion.

17.    From July 2008 through the present, a series of undercover operations have

4

been conducted at **Caesar Food Center** and **King Cole Foods**. These operations have utilized undercover USDA-OIG Special Agents and confidential informants, and these operations have been monitored by law enforcement and consensually recorded. All confidential informants used throughout this investigation have provided reliable and credible information in the past . . . .

(Docket Entry No. 6, at 4–11.)

In his affidavit, Agent McClutchey then explains, in detail, the undercover investigation

efforts from August 31, 2010, to June 30, 2011, which he summarizes as follows:

18.    During undercover operations conducted at **King Cole Foods** throughout this investigation **Ghazi Manni** conducted more than twenty (20) fraudulent food stamp transactions, during which he purchased approximately $8,638 in food stamp benefits from undercover USDA-OIG Special Agents and confidential informants in exchange for cash.

19.    During undercover operations conducted at **Caesar Food Center** throughout this investigation, **Kejbou** conspired with owners and employees of **King Cole Foods** to conduct more than thirty-eight (38) fraudulent EBT transactions, during which over $19,500 in food stamp benefits were purchased in exchange for cash. Based on the undercover meeting reference above, it is reasonable to believe that **Kejbou** conspired with **Adil "Eddie" Manni**, part owner of **King Cole Foods**, to execute these manual EBT transactions. During many of the aforementioned undercover transactions and corresponding manual food stamp benefit transactions, **Adil "Eddie" Manni** manually entered EBT card numbers and pin numbers, as provided to him by **Kejbou**, into the POS device assigned to **King Cole Foods** in order to disguise and/or conceal the transactions.

20.    As part of this investigation, I have reviewed food stamp transaction activity at other supermarkets serviced by the Detroit Field Office of USDA-FNS. Based on this review, I learned that comparable supermarkets in the area of Detroit, Michigan redeemed an average of $181,626 in food stamp benefits per month, while food stamp redemptions at **King Cole Foods** averaged more than $330,000 per month. Based on food stamp redemption activity above the comparable store average, conservative estimates of **food stamp fraud attributed to owners and employees of King Cole Foods, from May 2007 through September 2011, exceeds $5.3 million**.

21.    An analysis of **King Cole Food's** bank records indicate that the food stamp

5

reimbursements are electronically deposited into **Bank of Michigan Account # . . .** in the name of **King Cole Foods**. Checks written from Bank of Michigan Account # . . . are payable to companies such as Faygo, Sherwood Foods, Value Wholesale, and others. I know, from experience with other stores, that these companies supply inventory. Owners and managers of **King Cole Foods** effectively laundered the proceeds of the food stamp fraud by purchasing inventory for resale with food stamp fraud proceeds. As this inventory is sold, **King Cole Foods** is successful in converting the proceeds of the food stamp fraud into legitimate sales. Owners and managers of **King Cole Foods** laundered the fraudulent food stamp proceeds into inventory in violation of 18 U.S.C. §1956(a)(1)(B)(i) money laundering with the intent to conceal.

22.   From experience with previous investigations, I know that individuals engaged in food stamp fraud need to convert a portion of the proceeds into cash in order to purchase additional food stamp benefits. From January 2011 to September 2011, **Ghazi Manni**, **Sam Manni**, **and other employees of King Cole Foods Inc.** have withdrawn more than $250,000 in cash from **Bank of Michigan Account # . . . .** The withdrawal of food stamp fraud proceeds to purchase additional food stamp benefits is a violation of 18 U.S.C. § 1956(a)(1)(A)(i), money laundering with the intent to promote.

(*Id.* at 11–12.)

Agent McClutchey then provides an explanation why he believes there is probable cause to

search King Cole Foods, as follows:

25.   Based on my training and experience, and the collective experience of other law enforcement officer involved in this investigation, I know that food store businesses such as **King Cole Foods** must maintain records to facilitate operation of the business. Product invoices detailing the volume of wholesale food purchases can be compared to the corresponding retail volume of food items purportedly purchased with food stamp benefits. Based on this comparison, it can be determined whether a particular store has adequate inventory to support the volume of food purportedly purchased with food stamp benefits.

26.   Based on my training and experience, and the collective experience of other law enforcement officers involved in this investigation, principals (owners, officers, and managers) of businesses dealing in the illegal purchase of food stamp benefits commonly maintain evidence associated with the operation of such illegal enterprises, including but not limited to, EBT cards, books,

6

records, receipts, notes, logs, ledgers, cancelled checks, bank statements, telephone bills, electronically stored records, and other sources of information relating to the purchase, sale transfer, or concealment of illegally obtained proceeds and assets.

27.    Based on the undercover operations conducted at **King Cole Foods**, it is apparent that cash used to purchase large volumes of food stamp benefits is routinely kept at the store.

(*Id.* at 13.)

Pursuant to the search warrant, federal agents seized all EBT Point of Sale Terminals located in King Cole Foods, the currency from the store's safe, and all of the funds in King Cole Foods' operating fund bank accounts held at Bank of Michigan. (Docket Entry No. 32, at 6.) The Plaintiffs contend that the seizures of these properties resulted in a *de facto* seizure of the entire business because, after the execution of the search warrant, King Cole Foods was unable to conduct business and most of its inventory spoiled. (*Id.*) The Plaintiffs assert as follows: "King Cole Foods was unable to conduct sales of food, lottery, check cashing or money orders because it could not process 75% of its sales (from EBT transactions) and because its bank accounts and cash were seized. Most of its inventory went out of date and became spoiled and worthless." (*Id.*)

Following the execution of the search warrant, on September 23, 2011, the USDA Food Nutrition Services issued a Charge Letter. (Docket No. 1-1.) The Plaintiffs contend that "[t]his letter **did not disqualify King Cole Foods from conducting EBT transactions**, it was the subsequent conduct of the government actors, including Agent McClutch[e]y however, that made King Cole unable to conduct such transactions." (Docket Entry No. 32, at 6–7.) The Plaintiffs further allege:

At a minimum, the government's closure of the guts of King Cole's business–namely the seizure of the POS terminals and denial of access to its bank

7

accounts and cash– caused Plaintiffs to lose between $10,000 and $12,000 per day in gross revenue from EBT transactions.  Additionally, seizure of King Cole caused other damages, such as spoiled food, poor credit, loss of customers, decrease in Michigan lottery, check cashing and money orders.

Accordingly, Plaintiffs submit that but for the unconstitutional conduct by Agent McClutchey and other federal agents prior to King Cole's permanent disqualification, King Cole should have been able to conduct business and accept EBT benefits and continue its normal business . . . .

(*Id*. at 8.)

On October 5, 2011, the Plaintiffs filed a request for a civil monetary penalty in lieu of a permanent disqualification.  (Docket Entry No. 1-2.)

On October 31, 2011, the Plaintiffs filed a supplemental request for civil monetary penalty, which basically reiterated the store's attempts to ensure compliance with the SNAP.  (Docket Entry No. 1-3.)

On November 7, 2011, the FNS issued a determination letter stating that King Cole Foods was permanently disqualified from accepting SNAP benefits.  (Docket No. 1-4, at 1.)

On November 16, 2011, the Plaintiffs filed a request for administrative review of the FNS' November 7th Determination.  (Docket No. 1-5.)

On April 10, 2012, FNS issued its Final Agency Decision, which sustained King Cole Foods' permanent disqualification from the SNAP.  (Docket No. 1-6, at 2.)

Thereafter, the Plaintiffs filed their Complaint seeking *de novo* review of the FSN's Final Agency Decision, pursuant to 7 U.S.C. § 2023 and 7 C.F.R. § 279.7.  (Docket No. 1, at 6.)  The Plaintiffs also assert in their Complaint that the Defendants unlawfully seized their property and business without notice and a fair hearing in violation of the Fourth and Fifth Amendments and unlawfully subjected them to a disproportionate penalty in violation of the Eighth Amendment.  (*Id.*

8

at 5–8.)  The Plaintiffs also contend that 7 C.F.R. § 278.6(a), C.F.R. § 278.6(f)(1) and C.F.R. §

278.6(i) are unconstitutionally vague and ambiguous.  (*Id.* at 6, ¶ 24; Docket Entry No. 13, at 12;

Docket No. 25, at 14–15.)  The Plaintiffs seek money damages from the Defendants for the alleged

constitutional violations for loss of business, mental pain and suffering, impairment of reputation,

personal humiliation, and intentional infliction of emotional pain and suffering.  (Docket Entry No.

1, at 7.)

The Plaintiffs filed their First Amended Complaint on October 23, 2012, which adds Special

Agent Mark McClutchey as a defendant.  (Docket No. 19.)

## STANDARD OF REVIEW

In addressing a complaint under Rule 12(b)(6), the Court "accept[s] all well-pleaded factual

allegations of the complaint as true and construe[s] the complaint in the light most favorable to the

plaintiff."  *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002).  "Although a complaint need

not contain 'detailed factual allegations,' it does require more than 'labels and conclusions' or 'a

formulaic recitation of the elements of a cause of action.'"  *Reilly v. Vadlamudi*, 680 F.3d 617, 622

(6th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d

929 (2007)).  "Thus, a complaint survives a motion to dismiss if it 'contain[s] sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.* at 622–23 (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)).  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged."  *Ashcroft*, 556 U.S. at 678, 129 S.Ct. at 1949.

9

# ANALYSIS

**A.    The First Amended Complaint Fails to Show Any Facially Plausible Constitutional Violations on the Part of Agent Mark McClutchey.**

Agent McClutchey asserts that the First Amended Complaint does not explain his personal involvement in any facially plausible constitutional violation.  (Docket Entry No. 30, at 10–12.)

The allegations made in the First Amended Complaint relating to Agent McClutchey are as follows:

> 6. Defendant Mark [McClutchey] is the Special Agent in Charge of the Investigation, and is employed by the United States Department of Agriculture . . . .
>
> 13. On September 20, 2011, federal agents executed a search warrant on King Cole Foods located at 40 W. Clairmount Street in Detroit, Michigan. The affidavit supporting the search warrant related to alleged violations of food stamp regulations and laws by two employees of King Cole Foods. Also on September 20, 2011, federal agents executed a seizure warrant on King Cole Foods bank accounts at Bank of Michigan.
>
> 14. Pursuant to the execution of the search warrant, federal agents seized all EBT Point of Sale Terminals ("POS"), and all the currency from the store safe. Additionally the government obtained a seizure warrant and seized all of King Cole Food's operating bank accounts held at Bank of Michigan.
>
> 15. The seizure of all the store's EBT POS terminals, all of its bank accounts and all of its currency from its safe at the store *de facto* constituted the seizure of the entire business of King Cole Foods. Accordingly, due to the execution of the federal search and seizure warrants on September 20, 2011, King Cole Foods was unable to conduct sales of food and most of its food inventory went out of date and became spoiled and worthless . . . .
>
> 30. Defendants, acting under color of federal law conspired among themselves and with others to violate, and in fact violated, Plaintiffs rights, under the Fourth, Fifth and Eighth Amendments to the United States Constitution.
>
> 31. Defendants unlawfully seized the Plaintiff King Cole Foods business without due process in violation of the Fourth Amendment. Theses actions were based upon a deliberate avoidance of the facts and law, upon the execution of a search and seizure warrants on September 20, 2011 that resulted in the seizure of King Cole Foods' POS terminal, bank accounts and cash and causing King Cole Foods food sales to come to an abrupt halt as it was unable to conduct the majority of its business, despite the fact that it was not permanently disqualified from accepting SNAP benefits until November 7, 2011. Defendants' actions in conducting

these illegal searches and seizures constitute a deliberate abuse of governmental power.

32. Defendants unlawfully seized the business of King Cole Foods without allowing adequate due process for its owners in violation of the Fifth Amendment.

33. Defendants unlawfully penalized the Plaintiffs by applying a penalty that was grossly disproportionate to the crime allegedly committed in violation of the Eighth Amendment.

34. Plaintiffs are without an effective means of remedy, other than this lawsuit, to enforce their rights under the Constitution.

35. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered substantial damages. These damages include, but are not limited to, significant loss of business, mental pain and suffering, impairment of reputation, personal humiliation and intentional infliction of emotional pain and suffering, all of a permanent nature. Monetary damages are appropriate for the wrongs alleged herein.

(Docket Entry No. 19, at 2–3, 7.)

In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court held that individuals could "recover money damages for any injuries [they have] suffered as a result of [a federal agent's] violation of the [Constitution]." *Id.* at 397, 91 S.Ct. 1999. "As with § 1983 actions against state and local officials, . . . a claimant seeking relief under *Bivens* must overcome the federal official's qualified immunity." *Baranski v. Fifteen Unknown Agents of Bureau of Alcohol, Tobacco and Firearms*, 452 F.3d 433 (6th Cir. 2006) (citing *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). "To overcome that immunity, claimants must show (1) that the agents violated their constitutional rights and (2) that the constitutional right at issue is 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* at 438. (citing *Saucier*, 533 U.S. at 202, 121 S.Ct. 2151 (quotations omitted); *Flaskamp v. Dearborn Pub. Schs.*, 385 F.3d 935, 940–41 (6th Cir. 2004). Once a defendant raises a defense of qualified immunity, the plaintiff bears the burden of showing that the defendants are not entitled to qualified immunity. *Roth v. Guzman*, 650 F.3d 603,

609 (6th Cir. 2011).

The First Amended Complaint merely states that Agent McClutchey was the agent in charge

of the investigation, and then states that the federal agents executed the search warrant in violation

of the Plaintiffs' constitutional rights.  Upon reading the complaint, it is not exactly clear what Agent

McClutchey and the other agents did to violate the Plaintiffs' constitutional rights.  *See Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ("To survive a motion to dismiss,

a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than

a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are

merely consistent with a defendant's liability, it stops short of the line between possibility and

plausibility of entitlement to relief . . . . [T]he tenant that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice.") (internal

citations and quotations omitted).

Here, the Plaintiffs do not challenge that the search warrant was based on probable cause or

that their employees engaged in food stamp trafficking.  They also do not challenge any of the factual

assertions made in Agent McClutchey's affidavit or assert that the agents somehow improperly

executed the search warrant or overstepped their bounds by seizing items not specifically listed in

the warrant.  Instead, the Plaintiffs' arguments, with regard to Agent McClutchey, focus more on the

perceived "unfairness" of the seizures of their EBT terminals and the resulting sanction for their

12

employees' violations of the SNAP, as opposed to any alleged constitutional impropriety on the part of Agent McClutchey.

None of the allegations in the First Amended Complaint against Agent McClutchey demonstrate a constitutional violation. In their response to Agent McClutchey's Motion to Dismiss, the Plaintiffs contend Agent McClutchey had personal involvement in the alleged violation of the Plaintiffs' constitutional rights because:

> Defendant McClutch[e]y is the case agent of the government's investigation against the Plaintiffs, King Cole and its employees . . . . Plaintiff's do, however, know that he swore out the Affidavit in support of the search warrant for King Cole's store and was instrumental in the criminal investigation related to the employees of King Cole. He was also present at the execution of the search warrant and he has been involved in response to various contacts by Plaintiff's counsel to the government after the execution of the warrants.

(Docket Entry No. 32, at 10.)

The mere fact that Agent McClutchey was in charge of the investigation does not establish liability. *See e.g.*, *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (holding, in the context of an analogous § 1983 claim, that liability cannot be imposed under a theory of *respondeat superior* unless proof is offered that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate). Regardless, the fact that Agent McClutchey may or may not have participated in the execution of the search warrant does not establish a constitutional violation. *Marcilis v. Twp. of* Redford, 693 F.3d 589, 596–97 (6th Cir. 2012); *Dorsey v. Barber*, 517 F.3d 389, 399 n 4 (6th Cir. 2008); *Ghandi v. Police Dep't of Detroit*, 747 F.2d 338, 352 (6th Cir. 1984) (holding that the mere presence of an agent at the scene of a search, without a showing of direct responsibility for the action, will not subject an officer to liability). Agent McClutchey cannot be liable under *Bivens* for submitting the affidavit because the

13

Plaintiffs are not even asserting that the warrant was not based on probable cause or that the factual assertions in that affidavit are incorrect or fabricated. Finally, the fact that Agent McClutchey may or may not have been involved in response to various contacts by Plaintiff's counsel to the government after the execution of the warrants does not establish a constitutional violation.

The Court has already determined that the constitutional claims advanced against Plaintiffs United State of America and the United States Department of Agriculture have no merit when the Court granted the Government's Motion to Dismiss the First Amended Complaint. (Docket Entry No. 29, at 19–27.) The Plaintiffs re-alleges many of those same claims in their response. (*See* Docket No. 32, at 11–12.)

Finally, the Plaintiffs argue that Agent McClutchey's Motion to Dismiss is premature because discovery in this action has not yet been completed. But, under Federal Rule of Civil Procedure 12(a)(4)(A), a defendant in a civil action may file a motion to dismiss in lieu of filing an answer to a complaint before discovery has occurred.

## CONCLUSION AND ORDER

**IT IS ORDERED** that the Defendant Mark McClutchey's Motion to Dismiss Plaintiffs' First Amended Complaint is **GRANTED** [Docket Entry No. 30].

**IT IS SO ORDERED**.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: April 11, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 11, 2013, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager